Good morning, Your Honor, and may it please the Court, my name is Stephen Raiola. I'm an associate at Petrogallo, Gordon, Alfano, Bosick, and Responti, and I represent the appellant, Dr. Guangzhu Wang. I'd like to reserve two minutes for rebuttal, please. Yes, Counsel, and on behalf of the Court, we thank you for your pro bono service in representing Mr. Wang. Thank you for the appointment. As set forth in our briefs, the District Court committed a series of legal errors in the Wang's pleadings. It erroneously entered summary judgment in favor of the Nevada System of Higher Education on the allegations contained in four of the five numbered paragraphs of Dr. Wang's complaint. It issued a series of erroneous evidentiary rulings that prejudiced Dr. Wang's ability to prevail at trial on the allegations contained in the final paragraph of his complaint, and it abused its discretion by wrongfully taxing costs against the indigent victim of retaliation. I'm happy to answer questions about all these issues, but given my limited time, I want to focus the Court's attention on two issues. The first is the summary judgment orders, and the second is the evidentiary rulings, both before and during trial. Well, if you're going to start with the summary judgment orders, the Court — your client actually prevailed on Claims 1 and 2 except for damages, correct? That is correct, Your Honor. Okay. And let's assume that the Court was right in finding no compensatory damages for a moment from Claims 1 and 2. Did you claim nominal damages below? Did Dr. Wang claim nominal damages below? Dr. Wang claimed emotional damages. He did not in his complaint claim nominal damages. But the emotional damages claim under this Court's decision in saying — I asked you to assume. You can address why, in a moment, why the Court — you think the Court was wrong in finding no compensatory damages. I had a limited question, which is that if we were to uphold the district court in finding that there were no compensatory damages, emotional, financial, or otherwise, you did not seek nominal damage. He did not seek nominal damages. He did not seek nominal damages, but 42 U.S.C. section 2000e5g1 gives the district court the discretion when there's been a violation of Title VII to award equitable relief. I understand that. My difficulty is if we were to — if we were to reverse the district court for not doing something that nobody asked it to do, that would be — we'd have to find that it abused its discretion by not awarding nominal damages, right? Well, I'd be asking the Court to reverse for the district court not considering that it had the discretion one way or another to award nominal damages. Nobody raised that to the district court, correct? He did not. But again, Your Honor, the statute is clear that the district court has the discretion regardless of whether a party requests it to award nominal  And I don't want you — I know you have limited time. I don't want you to spend too much time on this. But do you have a case for the proposition that when a district court has discretion, she must indicate that I — I thought about this and decided not to do it? I do not have a case that says that, Your Honor, but I do think there are a number of cases in the Ninth Circuit and other circuits that say the district court needs to be aware of its discretion in order to exercise its discretion. And there was no indication in the record in this case that the district court was aware of the possibility of awarding nominal damages, which under this court's decision in Beare v. Neiman Marcus is significant because that award of $1 in nominal damages would have rendered him the prevailing party. So that cost couldn't have been taxed against him. And he was the victim of retaliation. I was going to ask you that question about — so even though he prevailed on claims 1 and 2, he could not be considered a prevailing party unless he was awarded damages? Is that your argument? That is not our argument. Okay. Your Honor, we made some arguments in our briefs that under the Supreme Court's decision in Farrar that there are circumstances in which nominal damages need to be awarded to render a claimant a prevailing party. I think because of the liability finding, this Court should find that he was the prevailing party. No. Now it gets back to my question. So if we were to find he was the prevailing party on claims 1 and 2, nominal damages would be irrelevant, wouldn't it, unless you want $2? It would be less relevant if you found him the prevailing party. But our argument is even if this Court was to find that you needed an award of nominal damages, which is the position of the Eleventh Circuit, the district court had the discretion to award that $1 in nominal damages to make him the prevailing party. Given the equities and the circumstances of this case of him being an indigent victim of retaliation, we think the district court should have considered the exercise of that discretion one way or the other. Now that we're talking about costs, I don't want to screw up your order of argument too badly, but I'd like to jump to the fifth claim. I assume, again, for purposes of my question, that the district court correctly entered judgment against your client on the fifth claim. Under those circumstances, is it an abuse of discretion to tax costs incurred at trial? We believe under the circumstances of this case, yes. Under this Court's decision in Stanley, there are two key factors. One is the indigency of the individual and their ability to pay costs and the deterrence that taxing costs would have on individuals bringing Title VII claims. And what's in this record that allows us to conclude that your client was indigent? Dr. Wong, in response to the bill of costs, said that he has not been employed since he was terminated from UNR and didn't have the money to pay a judgment. He pointed out that he had prevailed on the claim that the University of Nevada has a tremendous amount of money and it would deter people from filing these arguments below. I can't say that he submitted the informer papyrus paperwork, if that's what you're getting at, Your Honor, but he did represent below that he has not been employed and couldn't pay $15,000 in his responses to the bill of costs. Mr. Orloff, I'd like you to turn to the evidentiary questions and specifically with respect to Claims 1 and 2. Yes, Your Honor. So you're talking about the evidentiary rulings at trial and the exclusion of the phone call? Exactly. Yes, Your Honor. So as we... The phone call and the EEOC decision. Yeah, and I'll add to that, there was one other piece of evidence that was excluded and it's referenced in Claims 1 and 2, but it's an email in which Dr. Buxton expressly calls Dr. Wong's lawsuit misconduct. Dr. Wong asks Dr. Buxton to sign off on the transfer of his grant award. Dr. Buxton responds, I won't sign off on this because of your misconduct. Dr. Wong emails back Dr. Buxton and says, what are you talking about? I was a good employee at UNR. Dr. Buxton responds, you're right, I'm referring to your lawsuit. So that was also excluded. Which claims did that evidence relate to? Assuming that we treat the claims separately for a moment. I think it relates to all the claims, Your Honor. And the reason why, as we cite in our briefs, is the Supreme Court's decision in Morgan, this Court's decision in Lyons. Title VII cases are motive cases. It's about the motive that Dr. Buxton acted with when he told Dr. Wong that if he ever set foot on campus, he'd call security and he'd thrown out all of his lab supplies. So the question at trial was Dr. Buxton's gets up at trial. He's a professor and says, I had no motive. I wasn't upset over the lawsuit. And what you had was smoking gun evidence of retaliatory motive, which under Morgan, which under this Court's decision in Lyons, which under Rule 404B, that all of that evidence was the most significant persuasive evidence of the retaliatory motive. And Dr. Wong was not only excluded from putting that on in his opening case, he was excluded from putting it on to challenge the credibility of that witness, who came into the Court and said, I had no concerns over his lawsuit. I mean, Dr. Wong could have cross-examined him. What are you talking about? You called my lawsuit misconduct when you learned that I had gotten hired by UC Davis. You called an individual you didn't know to bring up my lawsuit and to badmouth me. That would have ---- How did that ---- you won on Claims 1 and 2. How does that evidence relate to Claims 3 and 4, which I take it the Court found were perfectly appropriate actions as opposed to, in other words, how did you pay the salary and how did you transfer stuff to the other school? The Court found that you'd agreed at some point that salary would be paid out of the grant. So I'm trying to figure out how these retaliate, whether or not there's any retaliation at all in 3 and 4, not with respect to whether there's a motive. With respect to 3 and 4, Your Honor, we believe that there was retaliatory motive and to quickly walk through ---- Well, now, let's assume there was retaliatory motive. Let's assume that they were entitled to do what they did. In other words, these were not ---- they may have been perfect ---- they may have been really happy to do this because they didn't like Dr. Wong, but under the law, they were perfectly entitled to pay him out of his grant and keep their own property. Well, I ---- So if that were true, then it really wouldn't matter how the motive that his supervisor had in these e-mails, would it? Well, we would submit, Your Honor, that that's not true, that the district court's rulings on both of those claims was wrong. And I think to take them one at a time, to go to the fourth claim, and let's layer all of this under the McDonnell Douglas framework, which the district court doesn't cite anywhere in its summary judgment opinion, and I think that that's a significant omission. But prima facie case, protected activity, adverse action, causation. But the district court says, as to four at least, this is the property of the university. It's not his property, and therefore, he can't make a retaliatory motive claim with respect to them simply keeping their property. And so I'm trying to figure out what's wrong. In other words, what's wrong with that? If he ---- if I fire you with a retaliatory motive, and you say, I'd like to take my desk with me, and I say, no, it's my desk, we don't have a Title VII violation, do we? What's wrong in several respects, Your Honor. The first is that we have evidence in the record that a number of the materials that were discarded were samples that originated from UAB. When Dr. Wong was at UAB, he transferred a number of his samples and his supplies to UNR, so they were not purchased with the interest over those supplies. As to the argument that UNR makes about the supplies, that they own the supplies, that would be a legitimate, nondiscriminatory reason that they have articulated for discarding them. But there's ample evidence of pretext that that isn't the reason that they were discarded, and the reason that they were discarded was to retaliate against Dr. Wong. So your position is that even if they owned them, discarding them can be a retaliatory action against him? If what motivated the discard of them was to punish Dr. Wong instead of to assert ownership of the supplies, then yes, and that's what the record reflects. Remember, they threw these out. They didn't use them. The stated reason for discarding the supplies, according to UNR, and I'd like to point out, there was a shifting explanation. Initially, when Dr. Buxton asked the university why the supplies had been discarded, Dr. Buxton said, you abandoned them, which we know isn't true, because Dr. Wong asked Dr. Buxton on several occasions to preserve them. Then litigation ensues, and they change the explanation to, we own the supplies, which is evidence of pretext under this Court's decision in Payne, the shifting explanation. But let's look at that shifting explanation for a second, that they own the supplies. UAB didn't take the position that they did. They let the scientists take his samples and the supplies he purchased with his grant to a new university, and UNR didn't use these supplies in any fashion. They didn't save them, put them somewhere in a cabinet for another scientist to use. Somebody went through the labs and just threw them out, which again raises the specter of pretext. I want to ask you one specific question, and it's about the right to sue letter. Our case law, and the case law elsewhere, seems to say a court can let this in or not let it in. Why was it an abuse of discretion not to let it in here? So you're referring to the EOC determination? Yes. Under this Court's decision in Plummer, I think Plummer establishes that the reasonable cause determinations should be admitted, and it's an abuse of discretion. That's right. They may be admitted. And my question is, why do you think the district court in this case abused its discretion in not admitting it? Because what is going on at trial is Dr. Buxton's motive, and that is, along with the email and along with the phone call, the most persuasive evidence of motive. And we're not just talking about excluding Dr. Wong from putting it on in his opening case. We're also talking about excluding Dr. Wong from using that evidence to impeach a witness who says, I had no retaliatory motive at all. I did this for perfectly legitimate reasons. That then brings in this Court's decision in Lyons, which says that appropriate background evidence is anything that tends to prove a discriminatory intent. Counsel, what was the reason the district court gave for excluding that evidence? Irrelevant. It didn't do it under 403. It just said that it was entirely irrelevant, which we would submit is plainly wrong under the Morgan decision, the Plummer decision, and the Lyons decision. I'll yield the remainder of my time, other than saying I think with respect to the first two claims, we think the district court got the facts wrong in a number of respects, and I'll bring up some of those points in response to counsel's arguments. Thank you. You have 27 seconds left. We'll give you a minute for rebuttal. I'd like to reserve five minutes for rebuttal. You don't get to reserve. Oh, I'm sorry. I'm used to appearing before the Nevada Supreme Court. You're used to losing, right? State your name for the record. It's hard to be the winner below. My name is Frank LaForge. I represent the Nevada System of Higher Education, which I will refer to as UNR, as in the University of Nevada at Reno. Mr. LaForge, why isn't Mr. Arloa correct that the district court's exclusion of the evidence at trial on the basis of relevance was wrong? Well, that goes to motive, and I think before you can ever get to motive, you need to establish an adverse employment action. And let's reiterate Dr. Wing's claims at trial. His claim was that UNR intentionally retaliated against him 10 months after his employment had ended by not letting him enter into a nonpublic space to recover possessions that the district court had already found did not belong to him. That's a part of the story. The district court found on Claims 1 and 2 that there was retaliation. So isolating the fifth claim of retaliation doesn't tell the whole picture of the case. That wasn't the only form of the retaliation. The other retaliation was giving him a bad reference. Well, I guess the district court ultimately concluded in summary judgment that those first and second claims, the ones where there was liability, had produced no damages. Right. But they still existed. That evidence still existed. So it's — Gave him summary judgment on it. Right. It said — Go ahead. Yeah. No. It said there was a retaliatory — you retaliated against him on Claims 1 and 2 by what you did. I just can't find any damage. I just can't find any damage. I could almost understand if the trial judge had concluded that this evidence perhaps would cause more confusion than it would prove on the issue before the court under 403. But the court ruled under 401 that these were irrelevant. And it's — I'm having a hard time concluding that these things were irrelevant because the whole idea of the discriminatory conduct and the retribution, I mean, plainly relates to why he was discriminated against. So help me get through this because it seems to me that at least that's a problem for you. Right. Well, the district court also mentioned FRE 403 earlier in her decision. And while she didn't articulate it, it was pretty clear that Mr. Wang was seeking to relitigate all of his first four claims. He had a 63-page pretrial brief with more than 200 trial exhibits. Well, but the fact that he was seeking to relitigate them might have led the judge to grant motions and limit what he can say. But his claim on number five was that there was a retaliatory motive in preventing him from retrieving his supplies, correct? Yes. And why isn't all this evidence which showed that the supervisors had acted against him, or at least expressed retaliatory evidence that might be retaliatory motives, relevant to that as relevant as it might be to claims one and two where he actually did prevail? Well, again, I think before you get to motive, you have to establish an adverse employment action. Okay, so thank you. That's what I'm trying to get to. So is it your position that stopping him from retrieving his supplies was not an Exactly. Unlike the Dr. Buxton's call, the one on which liability was found, actually went to Mr. Wang's trying to get a job at UC Davis. In this case, it's no different than for me going back to my former law firm and asking for all the post-it notes. Yeah, so let's assume that your former law firm keeps your property. Do you have a claim under the employment laws for that, or is it a different claim? That's what I'm trying to figure out. I mean, it may have done him wrong. I'm trying to figure out whether these are adverse employment actions, or whether adverse employment actions end when one's employment is terminated. What's your position? I don't see how it's conceivably an adverse employment action for an employer to refuse to Okay, so let's take, if you think it's temporal, let's assume that they retaliate by saying, we think he's a terrible person. He's no longer employed, but they've taken what I think is an adverse employment action. So the end of his employment can't be the terminus of their statutory responsibilities, can it? No, not exactly. And that's why I would agree that when it comes to a negative reference, that can be an adverse employment action because it affects him downstream. And kind of under that cat's paw analysis, that doesn't apply when someone is trying to Tell me what case says retaliation at the workplace. I mean, he comes back to the former workplace to get his supplies. Can't be, I understand this went to the jury, but can't be retaliation under the employment laws. I'm unaware of any such case directly on that precise point. So the judge thought there was a jury question on this point. Yes. I don't understand your question. The judge sent this to the jury. Claim five. Yes, it ultimately went to a jury. So the judge didn't think it was barred by the fact that it occurred after his employment. And now we're back to judge. This is a long way for me to get back to Judge Lynn's question. So motive had to be part of the calculus for the jury. And there's all this evidence about motive that was excluded at this portion of the trial. So why isn't that error? I mean, I can only repeat my argument that Okay, if we don't buy that argument, if we disagree with you regarding whether or not this was part of his employment, do you lose? No, I still think it would have been upholdable under FRD 403. The judge would have been well within her right. Is that 43? I don't think. Well, for it to be reversible on appeal, it not only has to be an evidentiary error. The plaintiff or Mr. Wang needs to establish that it would have materially affected the outcome. And I don't see how it's possible under the fact presented to the jury. But the jury never see. Here's my concern. The jury never heard the evidence that was all the evidence that was submitted in in support of the summary judgment motion. Correct? No, there were nine separate summary judgment motions, but the ones on which he was successful on counts one and two. Right. And and the judge knew about it, but the jury didn't. And I at least some of this is an attempt to present to a finder of fact the things on which you prevailed on summary judgment, which the judge seems to have found very persuasive in granting him summary judgment on claims one and two. So I'm trying to figure out why this is sort of irrelevant when you get to claim five. Okay. And I'm going to, I'm going to try to play this out. And so hear me out a little bit. Let's assume there was a retaliatory motive. Dr. Buxton and writing that email refusing to allow Mr. Wang to reenter the lab, cackled like an evil villain thought, aha, I'm finally getting back to back at you for that lawsuit. Still, if that was his purpose, how is there a an adverse employment action as a as a but for cause where Mr. Wang was asking to reenter a lab that was closed to the public to recover possessions that weren't his and that you and R had already explained to him it had disposed of. If this was so black and white, did you file a motion for summary judgment? Again, there were nine separate motions for summary judgment. I don't, for whatever reason, I'm not sure why this particular issue didn't come up for summary judgment after. I mean, why, why did this issue, why was this issue left to go to trial when it's according to you so clearly black and white that because he was no longer employed? University had an absolute right to exclude him. I'll be honest. That's a mystery to me. I think it was an oversight. Does the record help? I'm having trouble with the record on this. I need your help with the supplies discarded before Dr. Wang was refused entrance into his old lab or after. Um, it's my understanding that they were discarded before. Well, I don't think there was a fine point because I don't think you and R when it disposed of the supplies knew it was disposing of his particular. I'm not thinking accounts of claims three and four. I'm thinking of claim five. I'm trying to think about what the damage would have been from failing to allow him to enter a lab in which the things he was trying to retrieve had already been thrown out by your clients. And so I'm trying to figure out what the record establishes on that issue. Did they have any independent, was there anything in there left for him to get to my knowledge? No. Um, well, I'm not asking about your knowledge. I'm asking about the record and I don't know from the record. Um, I will stay on that issue. This is where his settlement agreement in April 2013 is relevant as to his leaving supplies. Um, because in that settlement he released all claims relating to or arising from his employment at UNR and that settlement was entered five months after his last day at UNR. Was it before trial? Yes. So we're talking about what happened at the trial now. So if it was released, that would have been litigated during the trial. If it was released, then there would have been a motion for summary judgment or a motion to dismiss saying all of these claims have been encompassed in the settlement. But that didn't happen. Well, I mean, the district court concluded that the supplies weren't his and this is just additional support for that point. Right. But the settlement agreement did not eliminate the cause of action. The settlement agreement, well, again, I wish in retrospect a summary judgment had been filed, but I think it would have disposed of but an additional reason to dispose of this point that the supplies weren't his. All of us are left with the record as it is. So that's what we have to use to make this decision. So the record as it is, the settlement agreement did not dispose of claim five. Not in a summary judgment motion. Well, and are you arguing on appeal that the district court judgment should be upheld for a separate reason, which is that there was a settlement agreement? I'm not sure I see that in your briefs. Well, it just goes. I don't know what it goes to. I want to know what you're arguing on appeal. In other words, you're entitled to come up to us and say, no matter what he's arguing, we should have won anyway, because we have a settlement agreement. We presented it to the district court. We claimed it as a defense, and the court erroneously didn't rule in our favor. But you're not claiming that on appeal. I'm looking at your brief. If it's in your brief, tell me where it is. I don't recall. Okay, so let's put the settlement agreement aside. If I read the record correctly, and I'm not sure I do, that your client threw out all of the evidence, would that support the jury verdict on Claim 5? In other words, the retaliatory action didn't damage him at all? Absolutely. I mean, was that argued to the jury? I don't recall. See, I don't want to make up things that didn't happen below, but when I read the record, it seems the temporal claim is that the stuff was thrown out before he was given the opportunity to come back. Maybe I can ask your friend about that. I think it just stands for an additional reason why, despite their lacking a motion-preserving judgment on the issue, this Mr. Wayne was never going to prevail on this claim, because he couldn't have had damages. Well, is it — didn't he say that the samples had independent value and he would have — you know, he would need money to recreate them if they were thrown out? Wasn't there a suggestion that those samples had value? I'm sure they did have value, but they didn't belong to him. They belonged to UNR. Could we talk about Claim 3 for a second? The argument on Claim 3 was that he was discriminated against because the settlement was used using his grant money, and you say there was an MOU stating that his salary would come out of his grant. So why does that make — why does that defeat Claim 3? I assume you're referring to Mr. Wayne's written acknowledgement in June 2012 that his remaining half-year at UNR in 2012 would be funded from his AHA grant. Okay, but my problem is there's a settlement with him, correct? Correct. And they pay the settlement out of his grant funds? Incorrect. Well, that's what he says. His claim — that's his claim, isn't it? That was part of his claim. I think it changed over time, but the district court found, because the UNR approved with actual physical checks, that $22,000 came strictly from the state tort claim fund as well as NG. Okay, so on Claim 3, which was a summary judgment claim, right? Correct. Tell me what the district court held. The district court held that — let me see, Claim 3 was — used the settlement funds. First of all, on his first claim, it held that the settlement funds were paid directly by the state tort claim fund and UNR, not the — And not out of the grant funds. Right. And there was — Was there any evidence to the contrary? No, there were two checks. Okay. And then Claim 4 is that they refused to transfer lab supplies to UC Davis and discarded them without Wang's consent. And I take it on that one, your argument is we owned them? Correct. Okay. I was just trying to — And the — Sort out the arguments that support — that either support or don't support the summary. And the settlement would figure into that argument. And again, I don't see a huge claim that was — on which summary judgment was granted. And the fifth claim, it — both concerned Mr. Wang's attempts to recover supplies that weren't his. And I know we're taking you over, but I'm trying to sort out the summary judgment record. You say we owned them based on a memorandum of understanding. You call it the settlement agreement, but it could be called the MOU. Okay. Was there contrary evidence that despite the MOU, Dr. Wang still owned these supplies that were not transferred and destroyed? In other words, he says, I owned them, I think. Isn't that enough to get to the jury? Or is there — No. There was — I think he first claimed the own of them under the AHA grant. And the district court found, looking at the grant language itself, that it was silent on the issue. It actually provided that UNR's policies would control whether — And then you overlay UNR's policies in the MOU on top of it. Exactly. That these items were purchased with UNR credit cards and therefore necessarily belonged to UNR, not Mr. Wang personally. And again, I still have a hard time understanding why Mr. Wang had a reasonable expectation that his former employer would serve as his de facto effective personal storage facility several months into the future. No, I just — I wanted to sort out the record on that. And I want to have a question for your friend on that, too. All right. Thank you, counsel. Are there any other questions? Judge Lee? No. All right. Thank you. No. Thank you. Let's put two minutes for rebuttal. All right. I've got three quick points I want to run through with my limited time. The first is I want to go to this adverse action point on the lab samples and add some context here. Dr. Wang was a research scientist whose grants paid for his salary and helped him get employment at the universities that he was involved in. Those scientific samples, in some cases, went through years of mutations and were part of ongoing experiments. They were his research. But opposing counsel said they belonged to the university. But the samples originated from UAB and weren't purchased with the UNR credit card. Dr. Wang showed that UAB, the university where he started with this grant, sent all of the samples to UNR. So some of the stuff was purchased with the UNR credit card. But then the question is — and this goes to dispute of fact and whether the jury — these questions should go to the jury — is the whole point that UAB didn't take this position that they owned everything. When Dr. Buxton said to Dr. Wang, who tried to retrieve his samples, what had happened, he said, you abandoned them, so we threw them out. Okay, so that gets to the question I really want you to answer. That's what Dr. Buxton said. When he came back to retrieve the samples or his supplies, they wouldn't let him in the lab. Is there any evidence that there was anything in the lab at that point? There's nothing in the record to say one way or another. All we have is — How could he have suffered damage? And what damage would he have suffered in that — or what damage did he claim in that trial? Well, part of the damage is in his claim. And I think this is where you — when you start splitting up these claims, it makes things more complicated than when you view it as a whole. He also pleaded reputational harm and emotional damages. And what we're talking about is — Okay, but that has nothing to do with the samples. It does, though, Your Honor, in this respect. With respect to this claim, Dr. Buxton sent an e-mail. Dr. Wang just sent Dr. Buxton an e-mail and said, can I retrieve the samples? And Dr. Buxton responded, Wang, you are not welcome in my department. I've told everyone on campus that security will be contacted if you ever come back. And that may give — that may give rise to liability. I'm just — I'm asking a very specific question. Did he suffer any discrete damage from not being allowed into the lab? Not from the actions Dr. Buxton undertook up till there, but just simply not being allowed into the lab? From that e-mail, yes. From the discharge — No, I'm not — I know. I know. Answer the question I've asked. Yes, if the samples and the supplies were still there, and we don't have in the record one way or another. There's no evidence. And Buxton's e-mail says I've already thrown them out. So do you have any proof that they were still there? I have no proof that they were still there. But this, again, goes back to the overlap of the claims. I mean, then we still have a live claim on Claim 4, and we should have gotten to the jury on the discard of the samples instead of splitting it the way — I'm asking you about five, because I'm trying — you had a trial and a jury ruled against you, and you've got a lot of arguments about why it should have — I still think — No, stop, stop. Unfortunately, I get to talk, and then you get to talk. We'll give you the time to respond, so don't worry about the clock. You have a lot of arguments about why the jury should have heard more evidence. And I'm trying to figure out why that matters if there was no proof that none of the supplies were still in the lab. So that's — so answer that for me. On Claim 5, assuming it's a discreet claim and assuming you're attacking the jury verdict, if there was no evidence that the supplies were still in the lab on Claim 5, shouldn't we affirm? He still might have emotional damages, Your Honor, based on the fact that his employer had threatened him, had told him he wasn't welcome there after working at a university for a couple years. And under this Court's decision in Zhang, those could go to the jury based on his testimony alone. And we still have the issue of his whole scientific research, which he needed to advance his course of research, being thrown out. How is that not an adverse action, particularly when you have the evidence that a lot of these samples originated at UAB, when you have the evidence that's in the record that they've taken inconsistent positions on why they threw them out, when they haven't to date articulated a reason why they couldn't do what UAB did and send the materials that they just threw out because they had no value to UNR and let them go with Dr. Wong. And Dr. Buxton, in fact, testified at a trial and admitted and acknowledged that samples are critically important to scientists. And I think the last point I just want to make before I sit down is I think a big problem with this case is that the district court resolved disputed questions of fact. And if I'm to provide one example, it is the district court reached the determination on the delayed start date that that was caused by the AHA. But his offer letter never contingent the transfer of his grant funding on the AHA. And UC Davis, in fact, concluded that the delay in his start date based on that reason was wrong, that under university policy, if it was a soft money position contingent on funding, it needed to be in his offer letter and it wasn't there. So you just have example after example of these disputed questions of fact being resolved in favor of the Nevada system of higher education. It's a complete reversal of the summary judgment standard. He was entitled to have all of these factual issues resolved in his favor. And if they are, he should be allowed to go to trial on all of these claims, which gets beyond the splitting point of there was nothing on five. Well, if there's nothing on five, there's something on four. All right. Thank you. Thank you. Thank you to both counsel for your helpful arguments. The case just argued is submitted for decision by the court.
judges: Linn, RAWLINSON, HURWITZ